

*FILED*
*U.S. DISTRICT COURT*
*DISTRICT OF MARYLAND*

2015 FEB -5  AM 9:11

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

P. Michael Cunningham
Assistant United States Attorney
michael.cunningham@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

Direct: 410-209-4884
Main: 410-209-4800
Fax: 410-962-3091

September 26, 2014

William C. Brennan, Jr.
Brennan McKenna
Manzi Shay, Chartered
6305 Ivy Lane, Suite 700
Greenbelt, MD 20770

Re:     *United States v. Larry Eugene Harding*
        Pre-Indictment Plea Agreement

Dear Mr. Brennan:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **October 6, 2014**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1       The Defendant agrees to plead guilty to a Criminal Information which will charge him with one misdemeanor Lacey Act count in violation of 16 U.S.C. §§ 3372(a)(2)(A) & (a)(4) and 3373(d)(2). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a.      The Defendant knowingly did or attempted to engage in conduct that involved the sale, purchase, transport, receipt, or acquisition of wildlife, to wit:  American Black Bear;

b.      That the American Black Bear had been taken, or possessed, or transported in violation of, or in a manner unlawful under the laws or regulations of Maryland;

c.      That the Defendant knew that the bear were taken, or possessed, or transported in violation of, or in a manner unlawful under, a law or regulation of Maryland.

## Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows:  1 year, a maximum fine of $10,000, and a term of supervised release for not more than one year.  In addition, the Defendant must pay $25.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Factual and Advisory Guidelines Stipulation

4.      This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.      Statement of Facts:

The defendant, Larry Eugene Harding, is 57 years old and a resident of Friendsville, Maryland.  Between 2008 – 2010, he operated Harding's Wild Mountain Herbs, Inc, and with Wallace Albert Harward of Timber Creek Services, engaged in commercial hunting activities for American Black Bear (*Ursus americanus*), the hunting for which is highly regulated in the state of Maryland.  Among other restrictions on hunting for black bear in Maryland, is a prohibition on use of bait to attract the bear, as well as requirements that hunters associated with each other on the same hunting license remain within view of each other while hunting. Harding also engaged in the commercial collection and sale of American ginseng (*Panax quinquefolius*), a product also regulated under the laws and regulations of Maryland and West Virginia. These activities took place in Garrett County, in western Maryland.

Unbeknownst to Harding and Harward, they were the subjects of an undercover law enforcement investigation by the Maryland Natural Resources Police ("NRP") and the U.S. Fish & Wildlife Service ("FWS"), for suspected violations of the Lacey Act, due to Black Bear hunting violations and illegal commercial activities involving ginseng.

During the course of the undercover investigation, Cpl Bennett, an officer of the NRP who both hunted with and assisted as a guide for Harding and Harward, discovered that they were using bait to attract bears to locations where the hunters – who had paid Harding and Harward to be guided in their pursuit of the bear – could more easily kill one of the animals. The undercover officer also learned that the defendants were violating the Maryland regulations that required a sub-licensee on a black bear hunting license to remain in visual contact with the licensee.

Specifically, Cpl Bennett stated that Harding and Harward placed apples and molasses to bait black bears for their clients, in violation of Maryland hunting regulations. On October 20, 2008 at the direction of Harding, Cpl. Bennett shot a bear which was eating the apples placed by Harding. Harding took photographs of the bear killed by Cpl. Bennett and explained that he shows these "field" pictures to people ████████████████████████████. Cpl. Bennett also advised that Harward requested and was listed as Cpl. Bennett's sub-permittee on Cpl. Bennett's Maryland hunting license to assist with the bear hunting. However, during the hunt, Harward did not maintain visual contact with Cpl. Bennett as required by Maryland regulation.

Beginning in August of 2009, Cpl. Bennett made arrangements via email, postal mail and telephone conversations to purchase a guided black bear hunt for himself and FWS Special Agent Bryce Findley, who was also acting in a covert capacity, from Harding, Harward and Timber Creek Services, LLC.

On September 22, 2009, Cpl. Bennett received an email from Harward, stating that SA Findley should list Harding as the landowner sub-permittee and Cpl. Bennett as the sub-permittee on the bear hunt form. On September 25, 2009, Cpl. Bennett mailed a $500 check to Harward as a deposit for the guided bear hunt for himself and SA Findley, representing that the latter was a resident of West Virginia. SA Findley received a letter dated October 7, 2009 from Harward which was in an envelope addressed to SA Findley's covert name and West Virginia address. Harward wrote that he had received a deposit of $500 for the guided hunt and that the remaining balance was $550.

On October 25 2009, Harding directed Cpl. Bennett and SA Findley to the Raven Rock area near Friendsville, Maryland for the purpose of showing them where to hunt bear. Harding showed them several potential hunting stands,████████████████████████ Later on October 25 2009, SA Findley had a conversation with Ricky Friend ████████ ████████. Friend stated that he was tired since he and "Larry" [Harding] had been baiting ████████████. ████████████████████████████ ████████████████. Friend also explained that he [Friend] personally got apple cores from Spring, Pennsylvania. He said his daughter went with him and they got a whole truck load of apple cores and pieces and put them out. ████████████████ ████████████████████.

*also hunting with the group.*

3

On October 25, 2009, SA Findley paid Harward $550 dollars in cash, the balance of the amount owed for the guided bear hunt and received a receipt from Harward. On October 26, 2009, SA Findley and Cpl. Bennett observed that R.R., a resident of Virginia who had purchased a guided hunt from Harding and Harward, killed a black bear in violation of Maryland hunting regulations as it was taken ~~while~~ while R.R. was not within visual distance of his sub-permittees. ~~Cpl. Bennett saw Harding kicking leaves onto what appeared to be a bait pile near the rock where R.R. had been hunting~~ Harward was R.R.'s sub-permittee; however, SA Findley observed that Harward was not in visual contact with R.R. The bear killed by R.R. was transported on Harward's Polaris ATV, Pennsylvania license plate C1491. SA Findley later heard R.R. state that he was going to transport the bear carcasses home to Virginia.

Later on October 26, 2009, SA Findley went to the hunting position Harding had suggested which was overlooking a pile of apples ~~and he immediately~~ where he shot and killed a black bear at the bait pile. The bears killed by Findley and R.R. were carried into the Harding's large metal building at his ginseng business. Photographs were taken by Harding, and Harward was recording with a video camera. The bear carcasses and skins were placed in a walk-in type cooler inside the metal building. Inside the cooler located inside Harding's brown metal building at his ginseng business, SA Findley and Cpl. Bennett observed five (5) plastic twenty-five (25) gallon garbage cans full of apple skins and cores. These apple pieces were consistent with the apple pieces in bait piles seen by SA Findley and Cpl. Bennett at Raven's Rock where Findley shot the bear.

~~During the course investigation, law enforcement officers also learned that Harding engaged in commercial transactions involving ginseng that violated the harvest regulations of Maryland. The exact value of the commercial transactions involving this illegal ginseng are indeterminate.~~

    b.    Guideline Calculation:

    i.    The parties agree that the base level for conviction on one count of 16 U.S.C. §§ 3372(a)(2)(b) & (a)(4) and 3373(d)(2) 1028 (a)(7) is 6 pursuant to USSG §2Q2.1 (a).

    ii.    The parties agree that the offense was committed for a commercial purpose and involved a pattern of similar violations, resulting in a 2 level increase pursuant to USSG §2Q2.1(b)(1). An additional 2 level increase pursuant to USSG §2Q2.1(b)(3)(A) is applicable due to the market value of wildlife and plants, for a total of 10 levels.

    iii.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to

4

sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.  Accordingly, the Defendant's adjusted total level is **8.**

5.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

6.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a) will be raised or are in dispute.

## Rule 11 (c) (1) (C) Plea

7.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the following sentence is the appropriate disposition of this case:  a **five (5) year term of probation,** during which the defendant must pay a **fine of $4,000** and **restitution to the Maryland Department of Natural Resources in the amount of $4,000,** both amounts to be paid in incremental installments as determined by the Court, and also during which time he is precluded from any guiding activity involving commercial hunting, and also during which term of probation the defendant is precluded from personally hunting for a period of **three (3) years.** This agreement does not affect the Court's discretion to impose any lawful conditions of probation.  In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void.  Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obstruction or Other Violations of Law

8.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case.  In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement.  Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement.  As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence.  The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

5

## Waiver of Statute of Limitations

9.      The Defendant understands and agrees that should the conviction following his plea of guilty pursuant to this agreement be vacated for any reason, then any prosecution that is not time-barred as of the date of the signing of this agreement (including any indictment or counts that the United States has agreed to dismiss at sentencing) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement or reinstatement of such prosecution.  The Defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this plea agreement is signed.

## Court Not a Party

10.     The Defendant expressly understands that the Court is not a party to this agreement.  In the federal system, the sentence to be imposed is within the sole discretion of the Court.  In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing.  The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence.  Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.  The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above.  The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement.  The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive.  The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

11.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

6

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

P. Michael Cunningham
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/02/2014
_____
Date

_____
Larry Eugene Harding

I am Larry Eugene Harding's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/02/2014
_____
Date

_____
William C. Brennan, Esq.

7